# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | Case Nos.  05-CR-132-JHP |
| ) | 08-CV-699-JHP |
| ) | |
| COREY CORTEZ GAINES, ) | |
| ) | |
| Defendant/Petitioner. ) | |

## ORDER

This is a proceeding initiated by the above-named petitioner who is currently an inmate at the Federal Correctional Institution in Texarkana, Texas. This action was initiated pursuant to the provisions of 28 U.S.C. § 2255. Petitioner contends that his detention pursuant to the judgment and sentence of the United States District Court for the Northern District of Oklahoma, in Case No.05-CR-132-JHP, is unlawful.

The Respondent filed a response by and through the United States Attorney for the Northern District of Oklahoma. On March 9, 2009, Petitioner filed a reply. In addition, the court has reviewed the relevant trial court records associated with Case No. 05-CR-132-JHP. The records reflect Petitioner was named in a one-count indictment on September 8, 2005, charging him with Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii). On December 12, 2005, a jury

trial was commenced and on December 14, 2005, the jury returned a verdict of guilty and found by special interrogatory that the offense involved in excess of fifty (50) grams of a mixture or substance containing a detectable amount of cocaine base ("crack"). *See*, Doc. 35. On March 29, 2006, the Defendant was sentenced to 205 months imprisonment. Additionally, upon release from imprisonment the Defendant was ordered to serve five (5) years on supervised release, to pay a $100.00 special assessment and a $5,000.00 fine. The judgment and commitment was filed of record on April 12, 2006.

Following his conviction, Petitioner filed a direct appeal in which he raised two issues: (1) there was insufficient evidence to introduce the audio recording of a January 5th telephone conversation and (2) the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to timely inform the defense of a second audio tape. On August 24, 2007, in an unpublished decision, the Tenth Circuit affirmed his conviction, holding: (1) Agent Rosebrough possessed the requisite "minimal familiarity" with defendant's voice to support admission of the January 5th telephone conversation and (2) failure to disclose a second audiotape of the January 9th transaction did not materially affect the outcome of the proceedings. *United States v. Gaines*, 243 Fed.Appx. 441 (10th Cir. 2007).

Thereafter, on July 22, 2008, pursuant to 18 U.S.C. § 3582(c)(2), this Court reduced Petitioner's sentence to 163 months. On November 24, 2008, Petitioner filed the instant Motion to Vacate, pursuant to 28 U.S.C. § 2255. Petitioner raises four issues herein: (1) out of court statements made by a confidential informant were used against Petitioner in violation of the confrontation clause and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); (2) trial counsel was ineffective in failing to cite and rely on *Crawford* to exclude the voice identification; (3) appellate counsel was ineffective for failing to ask the Tenth Circuit to reconsider their decision; and (4) appellate counsel was ineffective for failing to raise the *Crawford* issue on direct appeal.

The record below reveals that following his indictment, the Defendant was represented at his arraignment on September 14, 2005, by retained counsel, Darrel Bolton. Doc. 7. On October 7, 2005, Thomas Mortensen entered an appearance as retained counsel for the defendant. Doc. 11. Thereafter, on December 8, 2005, Andre Carolina filed an entry of appearance.[1] Both Mr. Mortenson and Mr. Carolina represented the defendant throughout the trial. Mr. Terry L. Weber was appointed to represent the defendant on appeal.

---

[1] Mr. Carolina was also retained by the defendant.

Prior to trial, defense counsel objected to the introduction of the recorded telephone conversation held on January 5, 2005, between Gaines and a confidential informant on the grounds that the telephone belonged to someone other than Gaines and the government could not prove the voice on the recording was Gaines. Jury Trial Transcript (hereinafter, J.T. Tr.), Vol. I, at pp. 3-11. Based upon the arguments of counsel, including defense counsel's acknowledgment that the case came down to the issue of whether the defendant was inside the vehicle when the controlled buy was conducted and that the phone records might be a small part of that issue, the Court advised counsel that it would wait until the evidence was offered before rendering a decision on admissibility.

Following jury selection, defense counsel advised the Court that he intended to object to the introduction of the January 5th audio recording because he believed the only person who could sponsor the recording was the confidential informant and he was not listed as a government witness. *Id.*, at pp. 101-02. The government indicated an agent with the Kansas Bureau of Investigation ("KBI") would sponsor the tape. *Id.*, at pp. 102-105. At that time, defense counsel advised the Court he was not arguing that the tape was not a true and correct copy of the conversation, only that the agent could not identify the voice on the audio recording as belonging to the

defendant. *Id*., at 104-106. Further, defense counsel argued no one on the government's witness list could "accurately sponsor this voice." *Id*., at p. 106.

Two agents from the Kansas Bureau of Investigation, Tim Holsinger[2] and Steve Rosebrough,[3] testified they observed the defendant, Corey Gaines, drive into the parking lot of a Burger King in Tulsa, Oklahoma and sell crack cocaine to a confidential informant. Holsinger was assigned to strip search the confidential informant before and after the controlled buy and to observe the transaction and he assisted Rosebrough in monitoring the transmitter the confidential informant was wearing. *Id*., at pp. 127, 137-138, and 142. Rosebrough was assigned to obtain the videotape, audio tapes and to provide surveillance of the controlled buy. J.T.Tr., Vol. II, at p. 223.

The testimony further revealed that the Kansas Bureau of Investigation began investigating the defendant in November, 2004. J.T.Tr., Vol. I, at p. 122-123. Using a confidential informant, several phone calls were made to the defendant. As a result of these phone calls, a controlled buy of cocaine from the defendant was arranged on January 9, 2005, in Tulsa, Oklahoma. *Id.* Over defendant's objection, Agent Rosebrough identified the voice on the telephone recordings as that of the defendant.

---

[2] J.T.Tr., Vol. I at pp. 121-178.

[3] J.T.Tr., Vol. II, at pp. 217-285.

Thereafter, the government introduced a cassette tape of a telephone call made on January 5, 2005, by the confidential informant. J.T.Tr., Vol. II*.,* at p. 220.

On January 9, 2005, the confidential informant made another telephone call to set up the purchase of 230 grams of crack cocaine for $5,000. Agent Rosebrough noticed that the voice of the person being called was similar to the person called on January 5, 2005, and concluded it was the same person. *Id.*, at pp. 220-221.

Prior to the controlled buy, the confidential informant was strip-searched, fitted with two audio recorders and Agent Holsinger gave the informant $5,000.00 buy money. The confidential informant was then taken by government agents to the front entrance of J.C. Penney's at Woodland Hills Mall where he was continually monitored and watched by several agents. *Id.*, at pp. 222-225.

After waiting at the agreed upon location for approximately two hours, the confidential informant was contacted on his cellphone and told to go across the street to a Burger King. As the confidential informant walked across the Woodland Hills Mall parking lot followed by government agents on foot, Agents Holsinger and Rosebrough moved their unmarked vehicle across the street to a parking area just east of the Burger King. As Agents Holsinger and Rosebrough waited for the controlled buy to occur, they both observed the defendant, Corey Gaines, drive into the parking lot past their vehicle. Both agents identified the defendant based upon a known

photograph of the defendant which was in their possession and their observations as his vehicle drove past them. The defendant was the only occupant inside his vehicle. The agents further observed the confidential informant get into the defendant's vehicle and heard the conversation, including the confidential informant referring to the driver as "Corey," as the controlled buy took place. Immediately after the confidential informant exited the vehicle and the defendant drove away, the confidential informant was immediately searched again. Instead of the $5,000 cash, the confidential informant had approximately 240 grams of crack cocaine on his person. J.T.Tr., Vol. I, at pp. 128-133, 141 and Vol. II, at pp. 225-231. Subsequent analysis of the substance recovered from the confidential informant confirmed that it was cocaine base. *Id.*, at pp. 286-289.

This controlled buy was recorded both by audiotape and videotape. *Id.*, at p. 229. The videotape showed the confidential informant getting into the defendant's automobile. *Id.*, at p. 230. Testimony from Agent Rosebrough indicated that the voice he heard on the audiotape of the actual transaction recorded and conducted on January 9th was the same as the voice he heard on the audiotape of the January 5th telephone call as well as on all other recorded telephone calls made in setting up the January 9th drug transaction. *Id.*, at pp. 231-232.

As indicated previously, Petitioner asserts in his first ground for relief that out-of-court statements made by the confidential informant were used against him in violation of the confrontation clause and the principles enunciated in *Crawford* (2004). Specifically, Petitioner challenges the identification of his voice on the January 5th audiotape by government agents asserting that the government agents knew Petitioner's name based solely upon what the confidential informant told them. Thus, Petitioner argues the government agents should not have been allowed to testify as to the identity of the voice on the January 5th audiotape and that the audiotape should not have been admitted without the confidential informant testifying at his trial.

The facts of his case are, however, clearly distinguishable from those in *Crawford*. Specifically, Michael Crawford stabbed an individual who he claimed had tried to rape his wife, Sylvia. According to Crawford, he had stabbed the victim because he believed the victim had pulled out some type of weapon. Sylvia gave a arguably different statement to the police indicating that the victim was not armed and was simply putting up his hands to defend himself from Crawford's attack. At trial, Petitioner Crawford claimed self-defense. Since Crawford asserted the state marital privilege, which bars a spouse from testifying without the other spouse's consent, the state sought to introduce the wife's tape-recorded statement as an exception to the

hearsay rule.[4] In reversing Crawford's conviction, the Supreme Court held testimonial out-of-court statements by witnesses are not admissible unless the witnesses are unavailable and the defendant had a prior opportunity to cross-examine the witnesses.

Unlike the facts in *Crawford*, the officers in this case used the name provided by the confidential informant solely to obtain further information about the defendant, including a known photograph of the defendant. Thereafter, the agents were able to identify the defendant based upon their personal observations of the defendant during the drug transaction. Rule 901(b)(5) of the Federal Rules of Evidence provides that familiarity of another's voice can be acquired before or after the conversation sought to be identified. *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir. 1979). Here, the agents testified that the voice of the defendant which was recorded during the January 9th controlled buy was the same as the voice they heard and recorded in earlier telephone conversations, including the January 5th conversation. *United States v. Gaines*, 243 Fed.Appx. 441, *2. *See also*, J.T.Tr., Vol. II, at p. 279. Thus, the information provided by the confidential informant was not a "testimonial statement" and the voice was clearly identified as provided in the Federal Rules of Evidence. Furthermore, the eyewitness testimony of two agents of the Kansas Bureau of Investigation that a confidential informant got into Petitioner/Defendant's car and

---

[4]In Washington, the marital privilege does not extend to a spouse's out-of-court statements admissible under a hearsay exception. *Crawford*, 541 U.S., at 40.

bought nearly half a pound of cocaine base for $5,000.00 was uncontroverted. Accordingly, Petitioner's claim is denied.

Petitioner asserts in his second, third and fourth grounds for relief that he received ineffective assistance of trial and appellate counsel because counsel did not cite and rely upon *Crawford* to prevent the admission of the January 5th audiotape at trial. Petitioner's claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, Petitioner must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. Failure to establish either prong of the Strickland standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.*, 466 U.S. at 696, 104 S.Ct. at 2069-2070. While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in Strickland,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.*, at 466 U.S. at 689, 104 S.Ct. at 2065. In addition, the Court indicated the conduct of counsel is "strongly presumed" to have been within the wide range of reasonable professional assistance. *Id.* The Tenth Circuit has indicated before representation will be considered ineffective, it must have made the trial "a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994); see also *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (holding counsel's performance must have been "completely unreasonable, not merely wrong," to be constitutionally ineffective). Furthermore, counsel's failure to raise an issue on appeal can only be ineffective when there is a reasonable probability that inclusion of the issue on appeal would have changed the result of the appeal. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001), cert. denied,535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). This Court "may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999).

In light of this Court's finding that the information obtained by the government agents was used solely to facilitate their investigation into the identity of Petitioner as opposed to supplying "testimonial" evidence at trial against Petitioner, this Court finds

Petitioner has failed to establish prejudice. Accordingly, Petitioner's claims of ineffective assistance of trial and appellate counsel are denied.

For the reasons stated herein, Petitioner's Motion to Vacate, pursuant to 28 U.S.C. § 2255, is hereby denied.

It is so ordered on this 22<u>nd</u> day of May, 2009.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma